UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

CELSO MAYORGA-HERNANDEZ,
RAUL AJBAL-CHUY,
VICTOR CHACON-SIR,
PEDRO CHIQUITA-TUBIN,
MARCELINO CHIQUITA-TUBIN,
SERGIO COCON-YOS,
BERNARDINO CUTZAL-SIMILOX,
GILBERTO MICULAX-MARROQUIN,
CARLOS MOXIN-TOL,
ELEUTERIO SITAN-MICULAX,
JOSE XICO-MICULAX, AND
NOE XICO-MICULAX,

        Plaintiffs,

v.

JAVIER GUERRERO, ADONAY
RESOURCES, LLC, WESLEY SHANE
WADE, AND SHILOH BERRY FARMS,
INC.

        Defendants.

**Civil Action No.:  5:24-cv-97**

**Demand for Jury Trial**

## COMPLAINT

## I. PRELIMINARY STATEMENT

1.      As part of an international human trafficking scheme, Plaintiffs were lured from their home country of Guatemala to work under the H-2A visa guest worker program in Defendants' 2022 agricultural operations in South Georgia.

2.      As part of the trafficking scheme, Defendants Javier Guerrero and Adonay Resources, LLC (collectively the "Adonay Defendants") contracted a foreign agency to recruit Plaintiffs in Guatemala.

3.     The Adonay Defendants and their foreign recruiters induced Plaintiffs into debt and financial dependence through false promises of work in Georgia under the terms and protections of the H-2A Program.

4.     In Georgia, the Adonay Defendants contracted with farms, including Defendant Shiloh Berry Farms, Inc., to provide H-2A workers for the 2022 harvest of blueberries and blackberries.

5.     The H-2A workers provided by the Adonay Defendants to Defendant Shiloh Berry Farms, Inc. included Plaintiffs.

6.     The Adonay Defendants also contracted with Shiloh Berry Farms CEO, Defendant Wesley Shane Wade, to house the H-2A workers in his labor camp.

7.     When Plaintiffs arrived in Georgia to work in Defendants' agricultural operations, they were denied the same benefits as their Mexican national H-2A co-workers.

8.     Defendants subjected Plaintiffs to poor living and working conditions and forced them to work for reduced wages under threats of severe financial harm and deportation.

9.     When Plaintiffs complained about the exploitative conditions, the disparate work conditions between them and the Mexican national H-2A workers, and the Adonay Defendants' failure to comply with the promises made during recruitment, the conditions worsened.

10.     Defendant Guerrero terminated Plaintiffs after he learned that Plaintiffs were seeking legal counsel to address the exploitative conditions and discrimination.

11.     Plaintiffs now bring this action to vindicate their rights under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.;* and Georgia contract law.

## II. JURISDICTION

12.    This Court has jurisdiction over the subject matter of this action under:

(a) 28 U.S.C. § 1331 (Federal Question);

(b) 18 U.S.C. §1595 (TVPRA); and

(c) 42 U.S.C. § 2000e-5(f)(1) (Title VII).

13.    This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367, because the state claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III, Section II of the U.S. Constitution.

## III. ADMINISTRATIVE PROCEEDINGS

14.    Nine of the named Plaintiffs[1] (collectively the "Charge Plaintiffs") filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging that Defendants Adonay Resources and Javier Guerrero discriminated against Plaintiffs and other similarly situated workers based on their race and national origin, in violation of Title VII.

15.    On September 5, 2024, the EEOC issued a Letter of Determination finding that Guatemalan employees, as a class, were discriminated against because of their national origin.

16.    The three additional plaintiffs, Noe Xico-Miculax, Eleuterio Sitan-Miculax, and Jose Xico-Miculax, are members of the class of employees whose Title VII claims arise out of similar discriminatory treatment as that alleged by the Charge Plaintiffs.

---

[1] Raul Ajbal-Chuy, Victor Chacon-Sir, Pedro Chiquita-Tubin, Marcelino Chiquita-Tubin, Sergio Cocon-Yos, Bernardino Cutzal-Similox, Celso Mayorga-Hernandez, Gilberto Miculax-Marroquin, and Carlos Moxin-Tol.

17.     Charge Plaintiffs received a Notice of Right to Sue from the EEOC within the last ninety (90) days and have complied with all other conditions precedent to the filing of this complaint. A copy of the Notice of Right to Sue is attached as Exhibit A.

## IV. VENUE

18.     Venue is proper in this district and division under 28 U.S.C. § 1391(b) - (d) and S.D. Ga. Local Rule 2.1, because:

(a) A substantial part of the events or omissions giving rise to the claims occurred in Bacon County, a county in this district and division;

(b) Defendants Javier Guerrero and Wesley Shane Wade reside in Alma, Georgia, a city in this district and division; and

(c) Defendants Adonay Resources, LLC and Shiloh Berry Farms, Inc. have their primary place of business in Bacon County, a county within this district and division.

## V. PARTIES

### Plaintiffs

19.     Plaintiffs are Guatemalan nationals.

20.     Plaintiffs are American Indian of Mayan Kaqchikel race, whose native language is Mayan Kaqchikel.

21.     Plaintiffs were admitted into the United States on a temporary basis under the H-2A Visa Program.[2]

---

[2] *See generally* 8 U.S.C. § 1188; 20 C.F.R. § 655.0, *et seq.*

**Defendants**

22.     Defendant Javier Guerrero ("Guerrero") is an individual residing in Bacon County at 827 S Ware Street, Alma, Georgia 31510.

23.     Defendant Guerrero is an H-2A Labor Contractor ("H-2ALC") because he recruited, solicited, hired, employed, furnished, housed, and/or transported H-2A workers, and he is not a fixed-site employer, an agricultural association, or an employee of a fixed-site employer or agricultural association.[3]

24.     At all times relevant to this action, Defendant Guerrero had authority to direct and manage Plaintiffs' work.

25.     At all times relevant to this action, Defendant Guerrero was an owner and day-to-day manager with operational control over Defendant Adonay Resources, LLC.

26.     Defendant Adonay Resources, LLC ("Adonay Resources") is a Georgia Limited Liability Company, with principal address within Bacon County, Georgia, and whose registered agent, Defendant Guerrero, can be served in Bacon County at 1120 West 12th Street, Alma, Georgia, 31510.

27.     Defendant Adonay Resources is an H-2A Labor Contractor ("H-2ALC") because it recruited, solicited, hired, employed, furnished, housed, and/or transported H-2A workers, and it is not a fixed-site employer, an agricultural association, or an employee of a fixed-site employer or agricultural association.[4]

28.     Defendant Wesley Shane Wade is an individual residing in Bacon County, Georgia at 150 Montana Lane, Alma, Georgia, 31510.

---

[3] *See* definition of "H-2A labor contractor" at 20 C.F.R. § 655.103(b).
[4] *See* definition of "H-2A labor contractor" at 20 C.F.R. § 655.103(b).

29.     At all times relevant to this action, Defendant Wade was an owner, CEO, and day-to-day manager with operational control over Defendant Shiloh Berry Farms, Inc.

30.     Defendant Shiloh Berry Farms, Inc. ("Shiloh Berry") is a Georgia Limited Liability Company, with principal address within Bacon County, Georgia, and whose registered agent, Defendant Wesley Shane Wade, can be served in Bacon County at 123 Peachtree Road, Alma, Georgia, 31510.

31.     At all times relevant to this action, Defendant Shiloh Berry was a fixed-site employer because it owned or operated a farm, or other similar fixed-site location where agricultural activities are performed, and because it recruited, solicited, hired, employed, housed, or transported H-2A workers as incident to or in conjunction with the owner's or operator's own agricultural operation.[5]

32.     At all times relevant to this action, Defendant Shiloh Berry had the authority to direct and manage the work that Plaintiffs performed in its operations.

33.     At all times relevant to this action, the Adonay Defendants employed more than fifteen employees and engaged in the production and distribution of agricultural products, including blueberries and blackberries, for sale in interstate commerce.

## VI. STATEMENT OF FACTS

### Statutory and Regulatory Structure of the H-2A Program

34.     The H-2A Program allows U.S. agricultural employers to hire temporary foreign workers ("H-2A workers") if the U.S. Department of Labor ("USDOL") certifies that there are not enough U.S. workers to perform the job and that the employment of H-2A workers will not adversely affect the wages and working conditions of similarly employed U.S. workers.[6]

---

[5] *See* definition of "Fixed-site employer" at 20 C.F.R. § 655.103(b).
[6] *See* 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1).

35.    To participate in the H-2A Program, an employer must submit an Application for Temporary Employment Certification to USDOL's Employment and Training Administration, including a detailed job offer (referred to as a job order).[7] This job order serves both as a recruitment tool for U.S. and H-2A workers and as the work contract for the employed workers.[8]

36.    The job order must comply with H-2A regulations[9] that establish, inter alia, minimum standards with respect to: Minimum Wages,[10] Transportation,[11] Recordkeeping,[12] Pay Statements,[13] Work Contracts,[14] and Housing[15].

37.    An H-2A labor contractor ("H-2ALC") who contracts with farms (fixed-site employers) to provide H-2A labor, must include, as part of their Application for Temporary Employment Certification, copies of the fully-executed work contracts entered between each fixed-site employer and the H-2ALC providing the H-2A workers.[16]

38.    When a fixed-site employer will provide housing to the workers, the H-2ALC's Application must include proof of, inter alia, an agreement that the fixed-site agricultural employer has agreed to comply with any applicable H-2A assurances and obligations.[17]

39.    If the USDOL certifies the employer's need, the Department of Homeland Security issues H-2A visas for the unfilled positions.

---

[7] *See* 20 C.F.R. § 655.130(a).
[8] *See* definition of "Work contract" at 20 C.F.R. § 655.103(b).
[9] *See generally* 20 C.F.R. § 655.100.
[10] *See* 20 C.F.R. § 655.122(l).
[11] *See* 20 C.F.R. § 655.122(h).
[12] *See* 20 C.F.R. § 655.122(j)(1).
[13] *See* 20 C.F.R. § 655.122(k).
[14] *See* 20 C.F.R. § 655.122(q).
[15] See 20 C.F.R. § 655.122(d).
[16] *See* 20 CFR § 655.132(d).
[17] *See* 20 CFR § 655.132(e)(1).

## The 2022 H-2A Work Contract

40.     On or about January 21, 2022, Defendant Guerrero submitted an H-2A Agricultural Clearance Order (the "Job Order") to the Georgia Department of Labor ("GADOL"), and an Application for Temporary Employment Certification to the USDOL, through his farm labor contracting company, Defendant Adonay Resources.

41.     The approved Job Order, (attached as Exhibit B), included, but was not limited to, the following terms:

(a)  A prohibition against the employer and its agents from seeking or receiving payment from any worker for application fees and recruitment costs;

(b)  Work beginning on March 22, 2022, and continuing until July 30, 2022;

(c)  Anticipated hours of work of 36 hours per week;

(d)  Workdays beginning at 8:00 AM and ending at 3:00 PM;

(e)  An hourly wage of not less than $11.99 per hour, and a piece rate of $3 for each six-ounce blackberry clamshell box, $4 for each 12-ounce blackberry clamshell box, and 50 cents for each pound of blueberries;

(f)  Free housing that meets local, state, and federal requirements, including adequate kitchen facilities with utensils to allow workers to cook their own meals;

(g)  Free roundtrip transportation once per week for personal errands;

(h)  Employment at various worksites, including those operated by Defendant Shiloh Berry Farms; and

(i)  Reimbursement for inbound and outbound travel expenses from their homes abroad to the worksite in Georgia.

42.    The Job Order contained the following Employer Certification signed by

Defendant Guerrero:

> I declare under penalty of perjury that I have read and reviewed this clearance
> order, including every page of this Form ETA-790A and all supporting
> addendums, and that to the best of my knowledge, the information contained
> therein is true and accurate. This clearance order describes the actual terms and
> conditions of the employment being offered by me and contains all the material
> terms and conditions of the job. 20 CFR 653.501I(3)(viii). I understand that to
> knowingly furnish materially false information in the preparation of this form and
> any supplement thereto or to aid, abet, or counsel another to do so is a federal
> offense punishable by fines, imprisonment, or both.[18]

43.    Upon information and belief, when Defendant Guerrero signed the Employer

Certification in the Job Order, he knew that:

(a) Plaintiffs would incur various fees and other expenses associated with H-2A

recruitment, travel, and employment;

(b) He would not reimburse Plaintiffs for the various pre-employment costs they

incurred;

(c) He would not provide Plaintiffs housing that met minimum standards required by

law; and

(d) He would not pay Plaintiffs the guaranteed hourly wage mandated by the Job

Order and the H-2A regulations.

44.    The Job Order included a promise to "comply with applicable federal and state

minimum wage . . . and other employment-related laws," which include Title VII and the

TVPRA.

---

[18] *See* Exhibit B, Page 8.

45.    The USDOL reviewed and ultimately approved the temporary labor certification application, which allowed the Adonay Defendants to recruit, transport, and employ Plaintiffs and other H-2A workers to meet the needs of their fixed-site agricultural partners, including Defendant Shiloh Berry Farms.

## Recruitment in Guatemala

46.    Upon information and belief, the Adonay Defendants contracted a recruiting agency called Salvemos las Comunidades (doing business as Salcom), in 2021, to recruit Guatemalan workers, including Plaintiffs, for jobs under the terms of the Job Order.

47.    At all times relevant to this action, Salcom was the Adonay Defendants' recruiting agent in Guatemala.

48.    Upon information and belief, the Adonay Defendants knew or should have known that the workers being recruited were susceptible to exploitation and recruitment fraud, such as workers with limited or no knowledge of the H-2A Program, the U.S. legal system, U.S. employment rights, or the English language; as well as individuals from poor communities with few or no good job opportunities in their home country.

49.    At the time of recruitment, Plaintiffs had no prior experience with the H-2A Program, limited or no knowledge of the U.S. legal system and/or, employment rights, and no English language skills.

50.    At the time of recruitment, Plaintiffs earned significantly less money in Guatemala than what they could earn as H-2A workers and no other prospects of employment as lucrative as what the Adonay Defendants offered.

51.    In 2021, Salcom recruiters contacted Plaintiffs with lucrative offers of employment with the Adonay Defendants in Georgia.

52.     Salcom recruiters promised Plaintiffs jobs under the terms of the Job Order, which included free employer provided housing, transportation, and reimbursement of pre-employment expenses.

53.     Recruiters also made assurances to Plaintiffs that successful completion of the contract would result in extensions of the contract length and/or subsequent employment in future seasonal contracts.

54.     The Salcom recruiters engaged in recruitment efforts under the direction of Defendant Javier Guerrero.

55.     Recruitment efforts included conference calls between Defendant Guerrero and prospective workers in Guatemala.

56.     Recruitment efforts included in-person coordination between Salcom Recruiters and Defendant Guerrero.

57.     On or around November 2021, Defendant Javier Guerrero traveled to Guatemala to take part in the recruitment of Plaintiffs and other workers for the Job Order, including an in-person recruitment meeting organized by Salcom.

58.     During the November 2021 recruitment meeting, Defendant Guerrero promised the prospective H-2A recruits, including Plaintiffs, that if hired they would be employed under the terms of the Job Order.

59.     Upon information and belief, when Defendant Guerrero promised the Plaintiffs employment under the terms of the Job Order, he knew that:

    (a) Plaintiffs would incur various fees and other expenses associated with H-2A recruitment, travel, and employment;

(b) He would not reimburse Plaintiffs for the various pre-employment costs they would incur;

(c) He would not provide Plaintiffs housing that met minimum standards required by law; and

(d) He would not be paying workers the minimum contract rate of $11.99 an hour.

60. Throughout the recruitment process, Salcom recruiters demanded and collected various fees from Plaintiffs.

61. Salcom recruiters charged Plaintiffs various fees, including but not limited to fees for airfare and travel, visa processing, attorney costs, job training, unlawful recruitment fees, and other fees in excess of the actual costs of the services.

62. Plaintiffs reasonably believed that payments made to Salcom were necessary expenses and required for employment in the United States as H-2A workers under the Job Order.

63. The extent of the total required fees was not disclosed to Plaintiffs at the start of recruitment.

64. Upon information and belief, the extent of the total required fees and expenses were intentionally hidden, and charges were staggered throughout the process so that Plaintiffs felt compelled to continue paying Salcom's fees in fear of losing previously paid fees.

65. For example, Plaintiffs were required to pay an additional fee, on top of previous payments, to finance Defendant Guerrero's travel to Guatemala on or around November 2021.

66. During recruitment, the Adonay Defendants directly and/or through Salcom told Plaintiffs they would be reimbursed for pre-employment expenses.

67.     Plaintiffs reasonably believed that, by working for the Adonay Defendants, they would be reimbursed pre-employment costs and earn wages sufficient to cover the recruitment fees, pre-employment expenses, and the associated loans, including interest.

68.     During recruitment, the Adonay Defendants directly and/or through Salcom, told Plaintiffs they would be offered more work hours than the anticipated 36 hours a week.

69.     In reasonable reliance on promises made by the Adonay Defendants and Salcom, Plaintiffs invested significant time and financial resources to secure what recruiters represented as desirable jobs in the United States, including but not limited to exhausting their savings, and borrowing money from family, friends, banks, and loan sharks, often at high interest rates.

70.     Plaintiffs' expenses, including those described in Paragraphs 60, 61 and 65, were costs required to enter the United States as an H-2A worker and to work for the Adonay Defendants under the Job Order.

71.     Defendant Guerrero knew or should have known that his Salcom agents were charging Plaintiffs various fees associated with Plaintiffs' recruitment and employment under the Job Order.

72.     During recruitment, Defendant Guerrero instructed Plaintiffs and other prospective workers in Guatemala to always answer that they did not pay any fees to work for him if they were asked by U.S. officials or other H-2A workers in the United States.

73.     In 2022 and shortly before leaving Guatemala to the United States, Salcom required that Plaintiffs provide monetary and other collateral as an assurance that Plaintiffs would not quit the job early and would complete the term of the Job Order, despite Plaintiffs having already paid Salcom significant recruitment fees and pre-employment expenses.

74.    For example, Plaintiff Celso Mayorga-Hernandez, provided Salcom with the paper title to his mother's land as collateral to ensure he would complete the term of the Job Order with the Adonay Defendants.

75.    The loss of Plaintiffs' collateral would cause severe financial harm to Plaintiffs and their families.

76.    In a 2022 meeting with Salcom recruiters, and shortly before departing to the United States for the H-2A contract, Plaintiffs were instructed by Salcom to delete evidence of any recruitment communications from their phones, under the threat of rescinding the H-2A job offer.

**Failure to Reimburse Recruitment and Pre-Employment Expenses**

77.    Plaintiffs entered the United States on or around April 15, 2022.

78.    Plaintiffs entered the United States with little to no funds to buy food and other necessities because of the significant recruitment and pre-employment expenses they were required to pay in violation of the employment contract and the H-2A regulations.

79.    In Georgia, Plaintiffs told Defendant Guerrero that they had paid pre-employment expenses.

80.    The Adonay Defendants did not reimburse Plaintiffs for any of their unlawful pre-employment- expenses.

81.    The Plaintiffs' H-2A visas only authorized them to remain in the United States for the duration of the work contract and only authorized them to work under the work contract with the Adonay Defendants.

82.    Defendant Guerrero knew that Plaintiffs were only authorized to work under the work contract and could not seek other legal employment in the United States.

83.    Defendant Guerrero knew that Plaintiffs were reliant on his employment to repay the debts he and his recruiters required them to incur in violation of the employment contract and the H-2A regulations.

84.    The Adonay Defendants' failure to reimburse Plaintiffs for unlawful pre-employment expenses further undercut Plaintiffs earnings and their ability to meet their financial obligations and cover their living expenses.

85.    The Adonay Defendants' failure to reimburse Plaintiffs contributed to Plaintiffs' dependence on continued employment under the Job Order.

### Working Conditions

86.    On or around April 15, 2022, Defendant Guerrero transported Plaintiffs, except for Plaintiff Carlos Moxin-Tol, from the Hartsfield-Jackson Atlanta International Airport to Defendant Wade's labor camp where the workers would stay during their employment in Georgia.

87.    On or around April 16, 2022, Plaintiffs, except for Plaintiff Carlos Moxin-Tol, began working in the harvest of blueberries at one of the fields owned by Defendants Shiloh Berry and Shane Wade.

88.    On or around April 17, 2022, Plaintiff Carlos Moxin-Tol began working in the harvest of blueberries.

89.    Plaintiffs were not paid any wages for their first day of work performed between April 16 and April 17, 2022.

90.    Plaintiffs Eleuterio Sitan-Miculax and Jose Xico-Miculax worked in the harvest of blueberries at various fields, including those owned by Defendant Shiloh Berry, until on or around May 13, 2022.

91.    Plaintiffs Pedro Chiquita-Tubin, Marcelino Chiquita-Tubin, and Noe Xico-Miculax worked in the harvest of blueberries and blackberries at various fields, including those owned by Defendant Shiloh Berry, until on or around June 24, 2022.

92.    Plaintiffs Celso Mayorga-Hernandez, Raul Ajbal-Chuy, Victor Chacon-Sir, Sergio Cocon-Yos, Bernardino Cutzal-Similox, Gilberto Miculax-Marroquin, and Carlos Moxin-Tol worked in the harvest of blueberries and blackberries at various fields, including those owned by Defendant Shiloh Berry until around July 6, 2022.

93.    Between April 15, 2022 and July 30, 2022, Plaintiffs and other H-2A workers harvested crops for Defendant Shiloh Berry. *See* Exhibit B at 10.

94.    Upon information and belief, the activities performed by Plaintiffs were an integral part of the overall business operations of all Defendants – if the fruit is not harvested, it cannot be sold.

95.    The Adonay Defendants transported Plaintiffs to the worksites, often arriving on or around sunrise.

96.    The Adonay Defendants had Plaintiffs wait at the worksites without pay while the fields dried from the rain and morning dew.

97.    The Adonay Defendants deducted one hour per day from Plaintiffs' wages for a lunch break, despite Plaintiffs not being given a one-hour lunch breaks.

98.    The Adonay Defendants did not pay Plaintiffs the promised minimum hourly wage.

99.    When harvesting blueberries and blackberries, the Adonay Defendants paid Plaintiffs at piece rates below the guaranteed hourly wage.

100.    The Adonay Defendants forced Plaintiffs to perform arduous labor without adequate access to food or water.

101.    On or around July 2022, a Guatemalan worker fainted from heat exhaustion while working in the fields.

102.    Plaintiff Victor Chacon-Sir and other workers moved the unconscious worker into the shade so he could recover.

103.    The field supervisor did not offer any assistance or medical aid to the unconscious worker.

104.    On multiple occasions, field supervisors berated Plaintiffs about their work.

105.    The berating by field supervisors included insults about Plaintiffs' Guatemalan nationality.

106.    When Plaintiffs complained about the poor treatment, a field supervisor threatened the workers by yelling at them that their work was worthless and saying that they would all be sent back to Guatemala if they kept complaining.

107.    During Plaintiffs' employment, Defendant Guerrero told Plaintiffs that leaving the Job Order early would bar the worker and their family members from obtaining a U.S. visa in the future.

108.    At the start of their employment in Georgia, Defendant Guerrero threatened the Plaintiffs that if a worker quit the job before the end of the contract, Guerrero would report the worker to immigration and that immigration would then chase after the worker.

109.    Defendant Guerrero forced and coerced Plaintiffs to continue working by threatening to deport and/or report any workers who quit to immigration.

110.    The Adonay Defendants took advantage of the fact that Plaintiffs could not legally secure alternative employment in the United States, to mistreat and exploit Plaintiffs.

111.    Plaintiffs reasonably believed that if they left their job, they would forfeit their collateral, lose the money they had already invested in fees for the job, and/or be unable to repay their loans.

112.    Plaintiffs reasonably believed that if they left their jobs, they could be deported, be barred from re-entering the United States, and/or suffer other severe harm.

113.    Despite the intolerable conditions, Plaintiffs continued to work for Defendants because they feared retaliation from Defendants, and/or they feared being unable to repay the loans Defendants had induced them to take out, and/or they feared being deported, and/or they feared being unable to return to the United States with an H-2A Visa.

114.    The Adonay Defendants entered into agreements with Defendant Shiloh Berry Farms and Defendant Shane Wade (collectively the "Grower Defendants") whereby the Adonay Defendants would provide the Grower Defendants with H-2A workers, including Plaintiffs, for their agricultural operations.

115.    As part of these agreements between the Adonay Defendants and the Grower Defendants, the Grower Defendants received Plaintiffs' labor.

116.    Upon information and belief, Defendant Shiloh Berry, or an agent of Defendant Shiloh Berry, would periodically watch the Plaintiffs while they were working in its fields.

117.    Upon information and belief, all Defendants benefited financially from participation in their labor contracting business venture between the Grower Defendants and the Adonay Defendants.

118.    Upon information and belief, Grower Defendants knew or should have known that the Adonay Defendants were not paying Plaintiffs the required wages for work on their farms.

## Housing

119.    Upon information and belief, the Adonay Defendants and Defendant Wade, entered into a valid contract (the "Lease Agreement") in which Defendant Wade agreed to provide his farming operation's labor camp to the Adonay Defendants to house Plaintiffs.

120.    Upon information and belief, the Lease Agreement identifies H-2A workers as the beneficiaries of the Lease Agreement.

121.    Upon information and belief, the Adonay Defendants and Defendant Wade entered into the Lease Agreement with the intent of providing housing to the H-2A workers supplied to Defendant Shiloh Berry by the Adonay Defendants.

122.    Upon information and belief, the Lease Agreement required Defendant Wade to provide a labor camp that met minimum standards, including adequate kitchen facilities and working plumbing.

123.    Upon information and belief, Defendant Wade received compensation from the Adonay Defendants for the use of the labor camp.

124.    Plaintiffs arrived at the worker housing in Alma, Georgia on or around April 15, 2023, with little to no money to pay for food and living expenses.

125.    At all times relevant to this action, the Adonay Defendants housed Plaintiffs at the labor camp owned and provided by Defendant Shane Wade.

126.    The housing provided by Defendant Wade did not comply with minimum housing standards, including that it was in unsanitary conditions, lacked the adequate kitchen facilities promised in the H-2A contract to prepare meals, and frequently lacked working plumbing.

127.    Upon information and belief, Defendant Wade or an agent of Defendant Wade and/or his company, Defendant Shiloh Berry, visited the labor camp while Plaintiffs lived at the site.

128.    The Grower Defendants knew or should have known that the labor camp used to house Plaintiffs was unsanitary, lacked adequate kitchen facilities, and had inadequate plumbing.

129.    At all times relevant, the Grower Defendants were familiar with the H-2A minimum housing standards, as they had participated in the H-2A temporary labor certification process during multiple seasons before 2022.

130.    Upon information and belief, Grower Defendants knew or should have known that the housing they provided to Plaintiffs did not meet the H-2A minimum standards.

131.    Defendant Guerrero restrained Plaintiffs' movement by prohibiting Plaintiffs from leaving the labor camp site unless an agent of the Adonay Defendants accompanied them.

132.    Defendant Guerrero falsely told Plaintiffs that they could not walk outside the labor camp's premises because immigration or law enforcement would detain them if they were seen outside the premises.

133.    Defendant Guerrero further isolated Plaintiffs by prohibiting them visitors to the labor camp.

134.    Because Defendants did not pay Plaintiffs their promised wages, and because Plaintiffs had paid out-of-pocket for substantial travel, visa, and other pre-employment expenses,

Plaintiffs had little or no money while in Alma, Georgia while working in Defendants' agricultural operations.

135.    At multiple times throughout their employment, Plaintiffs suffered from hunger because they could not afford to buy sufficient food.

The labor camp lacked air conditioning, despite 2022 summer temperatures in Bacon County averaging in the mid-80°F and peaking near 94°F.

136.    As a result of the Adonay Defendants' abusive and illegal conduct against Plaintiffs, Plaintiffs suffered financial harm, physical harm, and severe emotional distress.

137.    The working conditions and the threats of harm by Defendant Guerrero caused Plaintiffs emotional distress.

138.    The poor housing conditions of Defendant Wade's labor camp caused Plaintiffs emotional distress.

139.    After leaving the Adonay Defendants' employment, Plaintiffs continued to suffer emotional distress caused by the traumatic experience of working in Defendants' agricultural operations and the debt burden that they were induced to incur.

140.    Some of the Plaintiffs could not return to Guatemala without facing serious financial and reputational harm because of the substantial payments in recruitment fees and expenses that many Plaintiffs financed with substantial outstanding loans.

141.    As a result of the trafficking scheme, many Plaintiffs were left destitute and unable to reunite with their families, leading to prolonged family separation and significant emotional distress.

## Workplace Discrimination and Retaliation

142.    In addition to Plaintiffs and their co-workers of the same Guatemalan nationality and Kaqchikel race (collectively the "Guatemalan Kaqchikel Workers"), the Adonay Defendants also employed non-Kaqchikel Mexican nationals (collectively the "Mexican Workers") under the same Job Order to perform the same job as the Guatemalan Kaqchikel Workers.

143.    The Adonay Defendants discriminated against the Guatemalan Kaqchikel Workers in the conditions of employment.

144.    The Adonay Defendants housed Plaintiffs and other Guatemalan Kaqchikel workers in separate housing from the Mexican H-2A workers.

145.    Upon information and belief, the housing unit Adonay Defendants provided Mexican national workers was in better condition that the housing provided to Plaintiffs.

146.    The Adonay Defendants paid the Guatemalan Kaqchikel Workers based on production only (piece rate) and did not supplement their pay to meet the work contract's $11.99 hourly wage guarantee.

147.    Upon information and belief, the Adonay Defendants paid their Mexican H-2A workers the guaranteed H-2A hourly wage and/or supplemented their piece rate earnings to meet the guaranteed wage rate.

148.    The Adonay Defendants discriminated against the Guatemalan Kaqchikel Workers when the Adonay Defendants failed to reimburse the Guatemalan Kaqchikel Workers for any recruitment fees, travel expenses, or other employment-related expenses.

149.    Upon information and belief, the Adonay Defendants issued reimbursements to the Mexican H-2A workers for their pre-employment expenses.

150.    Plaintiffs and other Guatemalan coworkers complained to the field supervisor and to Defendant Javier Guerrero about the poor pay, lack of reimbursements for pre-employment expenses, and the disparate treatment between the Guatemalan Kaqchikel workers and the Mexican workers.

151.    Upon information and belief, Guatemalan workers received less pay than their Mexican counterparts for the same work.

152.    When Plaintiffs complained to Defendant Guerrero, Guerrero falsely told Plaintiffs that they and other Guatemalan workers were not entitled to the guaranteed hourly pay or reimbursements.

153.    On behalf of fellow Plaintiffs and Guatemalan Kaqchikel coworkers, Plaintiff Celso Mayorga-Hernandez sought legal advice to address their complaints, including the disparate treatment between the Guatemalan Kaqchikel Workers and the Mexican workers.

154.    Defendant Javier Guerrero learned that some Guatemalan Kaqchikel Workers had sought legal advice.

155.    After Plaintiffs and other Guatemalan Kaqchikel Workers complained about the working conditions, Defendant Guerrero assigned Plaintiffs and other Guatemalan Kaqchikel Workers to less favorable areas of the field with fewer harvestable crops.

156.    The less favorable assignments given to the Guatemalan Kaqchikel Workers limited the number of crops Plaintiffs could harvest and resulted in lower piece rate earnings for Plaintiffs.

157.    The Adonay Defendants constructively discharged Plaintiffs Eleuterio Sitan-Miculax, Jose Xico-Miculax, Pedro ChiquitaTubin, Marcelino -ChiquitaTubin and

Noe -Xico-Miculax from employment by subjecting them to exploitative and intolerable working and living conditions.

158.    On or around June 2022, after learning that the Guatemalan Kaqchikel Workers had made internal complaints and were seeking legal advice, Defendant Guerrero addressed Plaintiffs and their Guatemalan coworkers as a group to inform them that he would be ending the job contract early due to poor harvest conditions.

159.    Upon information and belief, Defendant Guerrero's proffered reason for ending the job contract early was pretextual.

160.    Guerrero terminated the contract for the Plaintiffs as retaliation for their protected activity under Title VII of the Civil Rights Act of 1964.

161.    Upon information and belief, workers who did not engage in protected activities were not terminated early or denied work opportunities.

### COUNT I: TVPRA - FORCED LABOR

*Against the Adonay Defendants Javier Guerrero and Adonay Resources*

162.    Plaintiffs incorporate and reallege each of the allegations contained in the preceding paragraphs by reference.

163.    Plaintiffs bring TVPRA forced labor claims against the Adonay Defendants under the civil remedies provision of the TVPRA, 18 U.S.C. § 1595.

164.    The Adonay Defendants knowingly recruited and obtained Plaintiffs' labor or services.

165.    The Adonay Defendants knowingly attempted to and did threaten Plaintiffs with serious harm against them and/or others to obtain the labor and services of Plaintiffs, in violation of 18 U.S.C. § 1589(a)(2).

166.    The Adonay Defendants knowingly attempted to and did threaten Plaintiffs with the abuse of law or legal process to obtain the labor and services of Plaintiff, in violation of 18 U.S.C. § 1589(a)(3).

167.    The Adonay Defendants retaliated against Plaintiffs for attempting to exercise their legal rights, threatened Plaintiffs with deportation and immigration penalties, and deceived Plaintiffs about the terms of their H-2A work contract in a manner that constitutes an abuse of the legal process under 18 U.S.C. § 1589(a)(3).

168.    The Adonay Defendants knowingly attempted to and did obtain the labor and services of Plaintiffs using a scheme, plan, or pattern which, in the totality of the circumstances, was intended to coerce and did coerce Plaintiffs to believe that they would suffer serious harm if they were to leave the employment of the Adonay Defendants, in violation of 18 U.S.C. § 1589(a)(4).

169.    The Adonay Defendants' scheme to use false promises to recruit Plaintiffs, force them to live in substandard conditions, keep them in a constant state of financial destitution, limit their movements, threaten with reporting them to immigration if they left the job, and subject them to unlawful discrimination, was designed to convince Plaintiffs that they would suffer serious harm if they were to leave the employment of the Adonay Defendants.

170.    As a result of the Adonay Defendants' violations as set forth in this Count, Plaintiffs seek economic, punitive, and emotional distress damages; the costs of this action; and reasonable attorney's fees.

## COUNT II: TVPRA – BENEFITTING FROM TRAFFICKING IN PERSONS

*Against Defendant Shiloh Berry*

171.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

172.    This Count sets forth a claim by Plaintiffs against Defendant Shiloh Berry under the civil remedies provision of the TVPRA, 18 U.S.C. § 1595.

173.    Defendant Shiloh Berry knowingly benefited financially from participation in a venture which they knew or should have known engaged in forced labor, because:

(a)  Defendant Shiloh Berry entered into a labor trafficking venture with the Adonay Defendants to secure H-2A workers, including Plaintiffs, for Shiloh Berry's agricultural operations;

(b)  Defendant Shiloh Berry received Plaintiffs' labor as a result of Shiloh Berry's labor trafficking venture with the Adonay Defendants;

(c)  The labor trafficking venture that Defendant Shiloh Berry entered into with the Adonay Defendants violated the TVPRA; and

(d)  Defendant Shiloh Berry knew or should have known that their labor trafficking venture with the Adonay Defendants violated the TVPRA as to Plaintiffs.

174.    Defendant Shiloh Berry is directly and vicariously liable under 18 U.S.C. § 1595(a) for the actions of its employees, agents, and representatives.

175.    As a result of Defendant Shiloh Berry's violations as set forth in this Count, Plaintiffs suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Shiloh Berry's participation in this labor trafficking venture with the Adonay Defendants.

176.    As a result of Defendant Shiloh Berry's violations as set forth in this count, Plaintiffs seek economic, punitive, and emotional distress damages, the costs of this action, and reasonable attorneys' fees.

### COUNT III: TVPRA – BENEFITTING FROM TRAFFICKING IN PERSONS

*Against Defendant Shane Wade*

177.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

178.    This Count sets forth a claim by Plaintiffs against Defendant Shane Wade under the civil remedies provision of the TVPRA, 18 U.S.C. § 1595.

179.    Defendant Wade knowingly benefited financially or by receiving anything of value from participation in a venture which they knew or should have known engaged in forced labor, because:

(a) Defendant Wade entered into a labor trafficking venture with the Adonay Defendants to secure H-2A workers including Plaintiffs, for his company, Shiloh Berry Farms, and its agricultural operations;

(b) Further, Defendant Wade participated in the labor trafficking venture through a lease agreement with the Adonay Defendants, whereby Wade would provide housing for the Adonay Defendants to house the Plaintiffs;

(c) Defendant Wade received Plaintiffs' labor as a result of their participation in the labor trafficking venture with the Adonay Defendants;

(d) Defendant Wade received rental income as a result of a lease agreement that was part of the labor trafficking venture;

(e)  The labor trafficking venture that Defendant Wade entered into with the Adonay defendants, violated the TVPRA; and

(f)  Defendant Wade knew or should have known that their labor trafficking venture with the Adoany defendants violated the TVPRA as to the Plaintiffs.

180.    Defendant Wade is directly and vicariously liable under 18 U.S.C. § 1595(a) for the actions of their employees, agents, and representatives.

181.    As a result of Defendant Wade's violations as set forth in this Count, Plaintiffs suffered substantial physical, emotional, and psychological harm, and other damages as a direct and proximate result of Defendant Wade's participation in this labor trafficking venture with the Adonay Defendants.

182.    As a result of Defendant Wade's violations as set forth in this count, Plaintiffs seek economic, punitive, and emotional distress damages, the costs of this action, and reasonable attorneys' fees.

## COUNT IV: TITLE VII: RACE AND NATIONAL ORIGIN DISCRIMINATION

*Against Defendants Javier Guerrero and Adonay Resources*

183.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

184.    Plaintiffs, members of a protected class, bring national origin and race discrimination claims against the Adonay Defendants, in violation of Title VII of the Civil Rights Act, as amended.

185.    Race and/or national origin were motivating factors for the Adonay Defendants' assignment of Plaintiffs to fields with fewer harvest-ready fruits than the fields assigned to the Mexican H-2A workers.

186.    Race and/or national origin were motivating factors for the Adonay Defendants' refusal to pay Plaintiffs' reimbursements for pre-employment expenses, and failure to supplement piece-rate earnings to meet the promised hourly contract wage rate.

187.    But for the Plaintiffs' race and/or national origin, the Adonay Defendants would have equitably distributed field assignments among all workers, ensuring that Plaintiffs had the same earning opportunities as the Mexican H-2A workers.

188.    But for Plaintiffs' race and/or national origin, the Adonay Defendants would have provided Plaintiffs with reimbursements for pre-employment expenses.

189.    But for Plaintiffs' race and/or national origin, the Adonay Defendants would have supplemented Plaintiffs' piece-rate earnings, which would have resulted in higher pay.

190.    By the conduct alleged in this Complaint, including paragraphs 142-156, the Adonay Defendants unlawfully discriminated against Plaintiffs on the bases of race and/or national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(b).

191.    As a result of the Adonay Defendants' violations as set forth in this count, Plaintiffs seek economic, punitive, and emotional distress damages, the costs of this action, and reasonable attorneys' fees.

## COUNT V: TITLE VII: RETALIATION

*Against Defendants Javier Guerrero and Adonay Resources*

192.    Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

193.    Plaintiffs, members of a protected class, bring Retaliation claims against the Adonay Defendants, in violation of Title VII of the Civil Rights Act, as amended.

194.    During their employment with the Adonay Defendants, Plaintiffs engaged in statutorily protected activity by, among other things, opposing, objecting to, and complaining against race and national origin discrimination in violation of Title VII, including but not limited to the conduct alleged in paragraphs 150, 152, and 153.

195.    The Adonay Defendants responded to the Plaintiffs' protected activity by taking adverse employment actions against the Plaintiffs, including but not limited to those alleged in paragraphs 155-161.

196.    The Adonay Defendants lack any legitimate justification for subjecting Plaintiffs to the adverse employment actions complained of above, and/or any such purported legitimate justifications are mere pretext for retaliation.

197.    The actions of the Adonay Defendants in subjecting Plaintiffs to the adverse employment actions complained of above were willful, deliberate, and intended to cause Plaintiffs harm, and/or were committed with reckless disregard for the harm caused to Plaintiffs and in violation of Plaintiffs' Title VII rights.

198.    As a direct and proximate cause of the Adonay Defendants' Title VII violations, Plaintiffs suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

199.    As a result of the Adonay Defendants' violations as set forth in this count,

Plaintiffs seek economic, punitive, and emotional distress damages, the costs of this action, and

reasonable attorneys' fees.

### COUNT VI: BREACH OF CONTRACT – THIRD-PARTY BENEFICIARY

*Against Defendant Wesley Shane Wade*

200.    Plaintiffs incorporate each of the allegations contained in the preceding

paragraphs by reference.

201.    Plaintiffs bring breach of contract claims under O.C.G.A. § 9-2-20(b) against

Defendant Wade.

202.    Defendant Wade and the Adonay Defendants had a valid and enforceable contract

in which Defendant Wade would provide the Adonay Defendants adequate housing for H-2A

workers, including Plaintiffs, as part of the Job Order.

203.    Plaintiffs are direct and intended third-party beneficiaries to the contract for

H--2A housing between Defendant Wade and the Adonay Defendants.

204.    Defendant Wade breached the Lease Agreement with the Adonay Defendants by

failing to provide adequate housing for Plaintiffs, which resulted in part by Defendant Wade's:

(a) Failing to provide shelters in a clean and sanitary condition;

(b) Failing to provide sanitary facilities for storing and preparing food;

(c) Failing to provide and install sufficient cooking equipment, including stoves and

refrigerators;

(d) Failing to provide adequate toilet facilities in a sanitary condition;

(e) Failing to provide adequate handwashing and bathing facilities; and

(f)  Failing to take adequate measures to prevent infestation of rodents and pests.

205.    As a direct consequence of Defendant Wade's breach of contract, Plaintiffs were injured.

206.    Defendant Wade is liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendant Wade's breaches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(a)    For Counts I, II and III, grant judgment against Defendants, in favor of Plaintiffs, and award Plaintiffs compensatory damages for Defendants' violations of the TVPRA; including punitive damages, and damages for the emotional harm that the Defendants' TVPRA violations caused;

(b)    For Counts IV and V, grant judgment against the Adonay Defendants, in favor of Plaintiffs, and award Plaintiffs compensatory damages, for the Adonay Defendants' violations of Title VII, including the economic losses, punitive damages, and damages for the emotional harm that the Defendants' Title VII violations caused;

(c)    For Count VI, grant Judgment against Defendant Wade, in favor of Plaintiffs, in the amount of Plaintiffs' damages as they arose naturally and according to the usual course of things from such breach as the parties contemplated, when the contract was made, as the probable result of such breach;

(d)    Award Plaintiffs pre- and post-judgment interest as allowed by law;

(e)    Award Plaintiffs reasonable attorney's fees and the costs of this action; and

      (f)     Award Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

**<u>JURY DEMAND</u>**

Plaintiffs request a jury trial on all questions of fact raised by this complaint.

This 19th day of December 2024.           Respectfully submitted,

*/s/ Juan Alberto Barragan-Rangel*
Juan Alberto Barragan-Rangel
Lead Counsel
Georgia Bar No.: 421897
E-mail: jbarragan@glsp.org

*/s/ Solimar Mercado-Spencer*
Solimar Mercado-Spencer
Georgia Bar No.: 686614
E-mail: smercado-spencer@glsp.org

*/s/ Lisa J. Krisher*
Lisa J. Krisher
Georgia Bar No.: 429762
E-mail: lkrisher@glsp.org

Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA 30303
Phone: (404) 463-1633
Fax:   (404) 463-1623

*Attorneys for Plaintiffs*